LYONS v. JONES et al.—121 S. W. (2d) 125.

Eastern Section.   May 20, 1938.

Petition for Certiorari denied by Supreme Court, October 22, 1938.

Mae R. Stricklin, of Wartburg, and J. W. Stone, of Harriman, for appellants.

Cassell & Ladd, of Harriman, for appellee.

PORTRUM, J.   This suit was instituted by J. R. Lyons to reduce to judgment an indebtedness evidenced by a note which in turn was secured by a trust deed upon certain described property,

and for a sale of the property to satisfy the judgment. The suit was filed in 1932 and was a protracted one, and now is an involved record composed of bills, answers, petitions, and cross bills, a- mended bills and amended answers, and to undertake to state the substance of all these pleadings would protract this opinion unduly, confusing and not clarifying the issues to be decided. Certain issues of law and facts grew out of this record, were considered by the Chancellor and were disposed of in his decree; these issues are re- stated in the assignments of error, and there discussed, and to ex- pedite the disposition of this case the court will follow the assignments of error which state the issues, discuss the necessary pertinent facts, and the law applicable to the issues, and then de- cide it. There are twelve assignments, but in discussing them the pleader has grouped them because they raise but one issue by different methods and in disposing of them the court will treat them as one assignment.

The pleader states that the first, second, and sixth assign- ments deal with the prematurity of the suit. A principal note of $1000 was executed on the 25th day of September 1930, due two years from date, namely, September 25, 1932; this suit was insti- tuted on the 17th day of September 1932, seven days before the maturity of the obligation. There was also another note sued up- on in the amount of $400 executed May 14, 1931, and was due two years from date. The excuse for instituting this suit before the maturity of the indebtedness was that certain suits had been in- stituted by creditors of the maker asserting furnishers' and ma- terialmen's lien upon the property, which secured the indebtedness, and to guard against the complication arising from a foreclosure of these inferior liens the suit was instituted. The bill was demur- rable upon its face, but an answer was filed raising the question of the prematurity of the suit, and the issue was never called to the attention of the Chancellor until the pleadings had been amended, the proof taken and the case called for a hearing upon the merits. Now, after a period of six years, it is insisted that this suit be dis- missed because filed prematurely by a period of seven days, the effect of which would be to start the litigation all over again. The defendants should have acted promptly and raised the question by demurrer and had it disposed of when it was timely, to raise it in the answer and rely upon it at the hearing worked an inequita- ble hardship upon the complainant, and does not touch the merit of the defense, and the course of conduct as followed by the de- fendant is treated as a waiver of the question of prematurity by this court. These assignments of error are overruled.

The seventh assignment is next dealt with in the brief and reads as follows:

"The complainant, J. R. Lyons, endorsed the two notes in ques-

tion in this suit to the Citizens Bank and Trust Company, of Wartburg, Tennessee, and also made an assignment of them to said bank, which assignment is registered in the Register's office of Morgan County, Tennessee, therefore, the Chancellor should have held that neither the complainant Lyons nor the Citizens Bank and Trust Company were entitled to maintain this suit and should have dismissed the same in so far as it sought to sue on the original consideration, and it was error for him to not so hold.''

The $1000 note originally sued upon bore a notation that the interest was payable semi-annually at the rate of eight per cent, and the note shows upon its face that it carried an usurious rate of interest, and when this fact was discovered by counsel representing the complainant, the bill was amended so as to abandon the suit upon the note and sue upon the original consideration. But prior to the institution of the suit the note had been hypothecated as collateral with the Citizen Bank and Trust Company, to secure another note in the amount of $2000. And there being no privity between the bank and the maker of the usurious note, the bank cannot maintain a suit upon the original consideration, and it is insisted that since the payee has negotiated the note to the bank and parted with his interest in the note, that he in turn cannot maintain a suit upon the original consideration. This position is not sustainable; the payee by hypothecating the note only impressed a lien upon it in favor of the bank, and owns an equity in the note sufficient to maintain an action upon it to protect him against the loss of its value. If this were not so the payee would bear the ultimate loss of the amount of the indebtedness because of his inability to sue. Where there is a right to pursue or protect equity will afford a remedy.

The eighth assignment reads:

''By making his amendment, withdrawing the note for $1000 and suing on the original consideration, the complainant admitted that the note was usurious and void and unenforceable by suit, and the Chancellor so held and decreed. The Chancellor then should have held that the note being void and unenforceable, that the trust deed being given to secure the note, that it was likewise void and unenforceable and it was error for the Chancellor to hold the said trust deed valid and order a foreclosure of the same.'' .

This is the most complicated and difficult of the issues presented. The suit as amended is a suit for money loaned upon the faith of property as security, without reference to the void note evidencing the indebtedness. The trust deed secures the indebtedness as evidenced by the note, identifying the void note, but the trust deed does not provide that the indebtedness shall draw an illegal rate of interest. Upon its face the trust deed is a valid instrument and it can be rendered invalid only by showing that it

secured a usurious note which is nonenforceable. But the debt sued upon here, being the original consideration, is recognized as valid and enforceable, and the trust deed was given in fact as ultimate security for this debt. We think the principle as reflected by the Tennessee cases is that so much of the debt (original consideration) as is enforceable in the courts is protected by the security, which may be enforced in the courts by the original creditor. There seems to be no good reason why the creditor can reduce the original consideration to judgment, demand an execution and levy upon the property of the debtor and subject it to the satisfaction of the debt, but at the same time deny the creditor the right to accomplish the same result by the enforcement of a trust deed given to secure the debt to the extent of the judgment recognized and decreed by the court.

"A conveyance of real estate as security for the payment of a usurious loan, whether by way of mortgage deed, or as absolute deed shares the statutory fortune of the usurious loan, whatever that may be. It is enforceable to the same extent as the loan secured, and no further." Usury, 66 C. J., Section 199, page 247.

As authority for this text many opinions are cited, including decisions of the United States Supreme Court, and two cases of the Tennessee courts, namely, Memphis Bethel v. Continental National Bank, 101 Tenn. 130, 45 S. W. 1072; Causey v. Yeates, 8 Humph. 605.

We have been unable to find a case in Tennessee directly in point, and while the cases contain expressions that the security is void when the note is void, nevertheless there is no case declaring the security void to the extent of denying relief where suit is upon the original consideration. In the case of McFerrin and Menifee v. White and Wife, 6 Cold. 499, the court held:

"If the note be void, the surety given for it is also void. But if it be valid to some extent, the security is valid to the same extent."

The parties had added usury to the principal of the note and the usury did not appear upon the face of the note; the court purged the obligation of its usury and held the note valid to the extent of the money actually loaned and legal interest thereon, and that the security was enforceable to the extent of the valid obligation. The court stated:

"Many cases have been cited to our attention, wherein the courts have refused to enforce a security given for a contract, tainted to some extent with usury. Most of those cases have been examined. They stand upon the law of the country wherein adjudged, that the usurious consideration, in part, vitiates and makes void the whole note or other contract. Where the law is so held as to the principal contract, it must be held of course that the collateral security

is void. If the principal contract be void, the security must be void also.''

This seems to us to be a clear recognition of the right to the enforcement of the security in satisfaction of the recovery granted, be it after the principle is purged of usury or as based upon the original consideration. This is the interpretation given in the case of Hughes Bros. Mfg. Co. v. Conyers, 97 Tenn. 274-277, 36 S. W. 1093, 1094, where it is said:

''. . . and, even if the provision were usurious, it would not vitiate the deed, so as to prevent a recovery for the amount actually due . . .''

In the case of Brannan v. Davis, 5 Tenn. App. 72, the court adopts the principle stated in the McFerrin & Menifee v. White Case, supra, and applies it, then enforcing the claim, by applying an implied vendor's lien as an additional security. We quote from the decision as follows:

''There was an express vendor's lien retained in the note and also a lien retained on the land in the face of the deed to secure the payment of the note. The note being void, on account of usury, it follows that the lien cannot be enforced for the satisfaction of the note. McFerrin v. White, 6 Cold. 499; 12 Michie's Tenn. Ency. Dig., 231. But in a suit on the original consideration agreed to be paid, the vendor has an implied lien on the land, which may be enforced in the original vendee, his heirs, and his subvendees who take with notice of the implied vendee's lien. [Citing authorities.]''

These cases speak of the security as void; this is a broad term and in view of the application of the law as found in the many reported cases, it is more correct to speak of the instrument as nonenforceable at the instance of the owner or secured party than to say the instrument is void. The principle applied by the Tennessee courts is that the holder cannot assert his claim in a court of conscience and will be repelled because of the illegality of the instrument. When the maker of the illegal instrument institutes the suit, then the holder may enforce his claim to the extent of the original consideration and interest.

''Although the statute declares that it shall be unlawful to receive more than six per cent. per annum, and the party guilty of taking usury, is indictable—yet when the usurious nature of the contract is disclosed by the plea of the defendant only—in such case the contract is not void in toto—but is valid for the sum actually due, and legal interest thereon. [Reed v. Moore], Meigs, 80. If a plaintiff sue upon a contract usurious upon its face, and in stating his case, the usury is made to appear, this court has held that he cannot recover even the sum actually advanced. Isler v. Brunson, 6 Humph. 277. The reason is, that his contract is illegal,

for which he may be indicted, and he is repelled upon the well settled principle, that the courts will not lend their aid for the enforcement of a contract, which is in violation of the law of the land. But when the usury is made to appear by the plea of the defendant only, the contract is held to be good for the sum due, and interest. It follows from these principles, that in this case the plaintiff could not treat the contract with the defendant as being void, and maintain trover for the pledge, without a tender by him, of the sum due on the contract after deducting the usury." Causey v. Yeates, 8 Humph. 605, 27 Tenn. 605.

And when the suit is instituted by a third party, a holder of a junior security, to require the holder of the senior security to foreclose, the holder of the senior security will not be repelled because the debt secured is usurious. His debt will be paid with legal interest out of the proceeds of the court's sale prior to the payment of the junior security's debt. Hughes Bros. Mfg. Co. v. Conyers, 97 Tenn. 274, 36 S. W. 1093.

The court holds that when the note is nonenforceable because usurious upon its face, its security is likewise nonenforceable; but when the original obligation is recoverable then the security is valid and enforceable to the extent of the recovery, be the institution of the suit by the holder of the obligation or the maker of the obligation, or a third party, the validity and enforcement of the security being dependent on the recovery recognized and granted by the court. Therefore, if the holder of the security cannot maintain an action upon the original consideration and must succeed if at all upon the validity of the note evidencing the usury, then he cannot enforce the security, having no enforceable obligation to support it. Stewart v. Lathrop Mfg. Co., 95 Tenn. 497, 32 S. W. 464. We find no adjudication in the reported cases reaching a different result requiring the denial of the rights insisted upon in this case. Entertaining the conclusion stated the assignment of error must be overruled.

The tenth and twelfth assignments raise the question that the defendant Grace Jones, was only a security on the $1000 note of her husband Hugh K. Jones, and that she received no part of the consideration and an action for the original consideration cannot be maintained against her; therefore the trust deed upon her interest in the mortgaged property cannot be subjected to the payment of the original consideration. Grace Jones and her husband owned the property by the entirety; the money was borrowed to construct a garage building upon the property, and while it is insisted that the record does not show that Hugh K. Jones expended the money upon the building, nevertheless it was borrowed for this purpose; and the cross-bill attempts to set up a contract and the breach thereof by the lender whereby he contracted to finance the

construction of the building by additional loans in the future. Due to the allegations of the cross-bill it is an inconsistency upon the part of the defendant to insist that she did not get the benefit of the loan.

And the wife, Grace Jones, insists that she executed the note contemplating six per cent interest, and that Lyons, in the presence and with the consent of her husband, changed the note so as to make an entry showing that it drew eight per cent payable semi-annually, and that she knew nothing of this alteration. She insists that this was a material unauthorized alteration which avoided the note as to her. Her husband, who had carried forward the transaction authorized the alteration, obtained the money on the altered instrument and expended it in the betterment of the joint property of himself and wife; she cannot deny the agency of the husband and reap the profit of the transaction; when she retains the benefit she ratifies the acts of her husband as her agent after knowledge of the alteration. And she did not raise this issue by a formal plea of non est factum.

The original bill was amended on November 20, 1934, abandoning the note as the evidence of the indebtedness, and suing upon the original consideration. The Chancellor allowed interest as of the date of the filing of the original bill, upon the theory that the amendment related back to the filing of the original bill. This is assigned as error. The original bill was a suit upon the note, and a purported copy of the note was exhibited thereto which showed it bore the legal rate of interest of six per cent. It is not explained why the client furnished this untrue copy of the note. The natural result of this conduct tended to work a deception upon the court as well as upon the defendants. The complainant by his bill as originally filed asserted a spurious demand, and since the doctrine of relation back of amendments is an equitable doctrine established and asserted by the courts to meet the ends of equity, then it is applied only in equitable cases. The complainant is not entitled to insist upon its application. The obligation as originally sued upon is in a manner fraudulent, and it should not support a claim for interest; a bona fide cause of action was first asserted November 20, 1934, and the obligation should draw interest from this date only. The decree will be so modified.

The remaining assignment of error is that the Chancellor should not have dismissed the cross-bill, but upheld the breach of a contract to furnish sufficient funds to complete the garage building. This alleged contract is too vague and indefinite for enforcement; and it is so unusual and unbusinesslike as to raise a doubt of the seriousness of the contention. If such were the contract it could have been incorporated in the original trust deed; there was no definite amount fixed as to what would be required to complete

the building, and it is insisted now that Jones did not use the original $1000 in construction of the building, but he used it for other purposes. How could a court determine the amount of future damages? There is nothing to indicate a meeting of the minds upon the terms of any such agreement.

The decree of the lower court, as above modified, will be affirmed, and the cause remanded to the lower court to carry out the orders of sale if the demands be not satisfied within a reasonable time; the cost of the appeal is divided equally between the appellants and the appellee.

Ailor and McAmis, JJ., concur.